IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **SUSAN MARIE NORTON,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**CARLO KNECHT, ASHLEY URBANUS, ERIC CALVERT, and MIQUAELA CARVER** as individuals<br><br>*Defendants.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

There have been two prior actions in this Court that arose out of the same transactions or occurrence alleged in this complaint, namely *Norton v. Modern District Financial, LLC*, Case No. 1:22-cv-1155 and *Norton v. Nelson MDF, LLC*, Case No. 1:23-cv-538.

## CLASS ACTION COMPLAINT

Plaintiff Susan Marie Norton ("Plaintiff" or "Norton") brings this Class Action Complaint and Demand for Jury Trial against Defendants Carlo Knecht ("Knecht"), Ashley Urbanus ("Ubranus"), Eric Calvert ("Calvert"), and Miquaela Carver ("Carver") (collectively "Defendants") to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls without consent to consumers who registered their phone numbers on the National Do Not Call Registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**PARTIES**

1. Plaintiff Susan Marie Norton is a resident of Lake Ann, Michigan.

2. Defendant Carlo Knecht is an individual located in Kingsley, Michigan and conducts business throughout Michigan.

3. Defendant Ashley Urbanus is an individual located in Traverse City, Michigan and conducts business throughout Michigan.

4. Defendant Eric Calvert is an individual located in Traverse City, Michigan and conducts business throughout Michigan.

5. Defendant Miquaela Carter is an individual located in Kaleva, Michigan and conducts business throughout Michigan.

**JURISDICTION AND VENUE**

6. This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

7. This Court has personal jurisdiction over the Defendants and the Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendants all conduct business in this District and the conduct giving rise to this case was directed by the Defendants to the Plaintiff who resides in this District.

**INTRODUCTION**

8. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's

representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020).

9. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

10. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 4.3 billion robocalls were placed in June 2022 alone, at a rate of 144.3 million calls per day. www.robocallindex.com (last visited July 7, 2022).

13. The FCC also has received an increasing number of complaints about unwanted calls, with over 150,000 complaints in 2020, and over 160,000 complaints in 2021. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules*

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

*and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

16. Defendant Carlo Knecht is a Michigan licensed insured sales agent that sells Medicare Supplements, Life Insurance, and other insurance products to consumers.

17. Defendant Ashley Urbanus is a Michigan licensed insured sales agent that sells Medicare Supplements, Life Insurance, and other insurance products to consumers.

18. Defendant Eric Calvert is a licensed insured sales agent that sells Medicare Supplements, Life Insurance, and other insurance products to consumers.

19. Defendant Miquaela Carvert is a licensed insured sales agent that sells Medicare Supplements, Life Insurance, and other insurance products to consumers.

20. Defendants place telemarketing calls to consumers to solicit their insurance products and/or services, including to phone numbers listed on the National DNC list, like in Plaintiff Norton's case.

## PLAINTIFF NORTON'S ALLEGATIONS

21. Plaintiff Norton's landline phone number ending in 1369 has been registered on the DNC since September 25, 2005.

22. Plaintiff Norton uses her landline phone number for personal and residential purposes only.

23. Plaintiff Norton has never conducted any business with any of the Defendants, nor has she given her consent to receive telemarketing calls from any of the Defendants.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

24. On June 23, 2022, at 7:08 PM, Plaintiff received a call from the phone number 231-342-7358 to her landline. Plaintiff answered the call and spoke to Carlo Knecht who tried to offer Medicare insurance solutions to the Plaintiff. Plaintiff Norton explained that she doesn't need insurance and already has an agent that she's working with, and the call came to an end.[3]

25. Plaintiff received a second call on June 24, 2022, at 5:14 PM, from phone number 231-357-9478. Plaintiff answered this call and spoke to Eric Calvert. Calvert solicited the Plaintiff to find Medicare solutions, and she again explained that she has no need for such services.[4]

26. Plaintiff received a call on June 24, 2022, at 5:49 PM, from phone number 231-357-9478. Plaintiff answered this call and spoke to Ashley Urbanus. Urbanus offered her services in finding Medicare solutions for the Plaintiff, who again explained that she has no need for such services.[5]

27. Plaintiff received a call on June 27, 2022, at 6:00 PM, from phone number 231-342-7358. This call was from Carlo Knecht to solicit insurance services to the Plaintiff. The Plaintiff specifically told Knecht to stop calling her and stated, "Take me off your calling list."

28. Plaintiff received an unsolicited call on June 28, 2022, at 8:29 PM from the phone number 989-710-1095. Plaintiff did not answer the call but a generic sounding voicemail was left by Miquaela Carver who said she was requesting a call back to provide assistance in providing a Medicare insurance quote.

---

[3] On calling this phone number, 231-342-7358, an automated voice system identifies the name Carlo Knecht.

[4] On calling this phone number, 231-357-9478, Eric answers the phone and identifies himself by name.

[5] On calling this phone number, 231-357-9478, an automated voice system identifies the name Ashley Urbanus with Modern District Financial.

5

29. On calling this phone number, 989-710-1095, an automated voice system identifies the name Miquaela Carver. No company name is mentioned.

30. Plaintiff received additional calls:

- June 29, 2022, at 4:47 PM from 231-357-9478, from Eric Calvert;
- June 29, 2022, at 5:50 PM from 989-710-1095, from Miquaela Carver;
- July 1, 2022, at 2:30 PM from 989-710-1095, from Miquaela Carver;
- July 7, 2022, at 5:05 PM from 231-357-9478, from Eric Calvert;
- July 19, 2022, at 6:25 PM from 989-710-1095, from Miquaela Carver;
- July 20, 2022, at 2:37 PM from 231-357-2391, from Ashley Urbanus; and

31. Plaintiff Norton never consented to receiving solicitation calls from the Defendants and does not have any existing business relationship with the Defendants.

32. The unauthorized telephone calls placed by the Defendants, as alleged herein, have harmed Plaintiff Norton in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

33. Seeking redress for these injuries, Plaintiff Norton, on behalf of herself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., which prohibits unsolicited telemarketing calls to phone numbers that are registered on the DNC.

## CLASS ALLEGATIONS

34. Plaintiff Norton brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendants Carlo, Calvert, or Urbanus, or an

6

agent calling on behalf of those Defendants, called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason that the Defendants called Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendants Carlo, Calvert, or Urbanus, or an agent calling on behalf of those Defendants, called more than one time, (2) within any 12-month period, (3) for substantially the same reason that Defendant called Plaintiff, (4) including at least once after the person requested that Defendants or their agent to stop calling.

35. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

36. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

37. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendants placed multiple calls to Plaintiff and members of the Do Not Call Registry class without first obtaining consent to make the calls;

7

(b)   whether Defendants or their agents placed multiple calls to Plaintiff and members of the Internal Do Not Call Class including at least once after the consumer requesting Defendants or their agents to stop calling;

(c)   whether the calls violated the TCPA;

(d)   whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

38.   **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither the Plaintiff nor her counsel have any interest adverse to the Classes.

39.   **Appropriateness**: This class action is also appropriate for certification because the Defendants acted or refused to act on grounds generally applicable to the Classes as a whole, and thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to the Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective

relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Norton and the Do Not Call Registry Class)**

40.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

41.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

42.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

43.     Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

44.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants'

9

conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

45. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Norton and the Internal Do Not Call Class)**

46. Plaintiff repeats and realleges paragraphs 1 through 39 of this Complaint and incorporates them by reference herein.

47. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are

10

made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

48. Defendants, or an agent calling on behalf of the Defendants placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendants or its agent to initiate telemarketing calls.

49. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said

regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

50. The Defendants have, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendants' conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Norton individually and on behalf of the Classes, prays for the following relief:

- a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;
- b) An award of damages and costs;
- c) An order declaring that Defendants' actions, as set out above, violate the TCPA;
- d) An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and
- e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Norton requests a jury trial.

DATED this 30th day of August, 2023.

        **SUSAN MARIE NORTON**, individually and on behalf of all others similarly situated,

        By: <u>/s/ *C. Nicholas Curcio*</u>
        C. Nicholas Curcio
        CURCIO LAW FIRM PLC
        16905 Birchview Drive
        Nunica, MI 49448
        Telephone: (616) 430-2201
        ncurcio@curciofirm.com

        Avi R. Kaufman*
        kaufman@kaufmanpa.com
        KAUFMAN P.A.
        237 South Dixie Highway, Floor 4
        Coral Gables, FL 33133
        Telephone: (305) 469-5881

        *Attorneys for Plaintiff and the putative Classes*

        **Pro Hac Vice Motion forthcoming*